COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2025AP3**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020CV7

**IN COURT OF APPEALS
DISTRICT IV**

HAYDEN DODGE, RIGOBERTO ACEVEDO RENDON, PABLO DOMINGUEZ, ALFREDO AGUIRRE, MARGARET LANE, BRUNO PONTO REAL, COLLIN VANDER GALIEN, TEKLA WLODARCZYK, RENE ALVA, MA DEL CARMEN FUERTES, AND NICHOLAS BOOKER,

   PLAINTIFFS-APPELLANTS,

 V.

DIDION MILLING, INC. AND NATIONWIDE MUTUAL INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS,

DIDION, INC., DIDION ETHANOL, LLC, AND PROBAT, INC. D/B/A BAUERMEISTER, USA,

   DEFENDANTS.

APPEAL from an order of the circuit court for Columbia County: W. ANDREW VOIGT, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.  The plaintiffs in this civil action bring personal injury and wrongful death claims against Didion Milling and Nationwide Mutual Insurance Company, Didion Milling's workers' compensation insurer (collectively, Didion).  The plaintiffs consist of the family members of employees who died as a result of an explosion that occurred at a facility owned by Didion and of employees who were injured in the explosion.[1]  The employees challenge the ruling of the circuit court granting summary judgment in Didion's favor and dismissing all of the employees' claims against Didion.  The employees argue that the court erred by concluding their claims were barred on the ground that the claims are subject to the exclusive remedies available under Wisconsin's Workers' Compensation Act ("the compensation act").  *See* WIS. STAT. § 102.03(2) (2023-24) (right to recovery provided under the compensation act "shall be the exclusive remedy against the employer" when "conditions of liability" for such recovery apply).[2]

¶2    More specifically, the employees' principal argument on appeal is that, because there is a genuine issue of fact regarding whether the explosion is an "accident" for purposes of the compensation act, summary judgment was improperly granted for Didion.  If the explosion is not an accident, then workers'

---

[1]  We use "the employees" to refer collectively to the plaintiffs-appellants.

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

compensation remedies do not apply under WIS. STAT. § 102.03(1)-(2). We conclude that, under the broad definition of "accident" established by case law interpreting the compensation act, the explosion constitutes an "accident."

¶3    The employees also argue that there is an additional basis to deny summary judgment dismissing the claims of a particular Didion employee, Nicholas Booker, who was injured as a result of the explosion. Booker came to the site of the explosion after it occurred in order to help rescue coworkers, although he was not working a shift for Didion at that time. The employees argue that this conduct was outside the scope of Booker's employment duties, and therefore, the exclusive remedies of the compensation act do not apply. Under pertinent case law, we conclude that Booker's conduct grew out of and was incidental to his employment.

¶4    Given our conclusions, there are no genuine and material issues of fact preventing the applicability of the compensation act's exclusive remedies to the employees' claims, and the circuit court properly granted Didion's motion to dismiss the action, under summary judgment standards, for failure to state a claim. Accordingly, we affirm.

## BACKGROUND

¶5    On May 29, 2017, a fire occurred in a corn milling facility (the mill) owned and operated by Didion Milling. That night, after the fire had been put out, production at the mill was resumed. Two days later, on May 31, another fire started inside the mill, this time resulting in an explosion that resulted in the deaths of five Didion employees and injuries to at least a dozen other Didion employees.

¶6    Two groups of family members of deceased employees and of injured employees brought tort claims in negligence against Didion, which were later consolidated into this action.

¶7    Didion moved to dismiss the employees' claims against it based on what Didion argued was the applicability of exclusive remedies under the compensation act for the employees' deaths and injuries. The circuit court left this motion unresolved while it permitted the parties to engage in limited discovery related to the issue of whether workers' compensation remedies exclusively apply.

¶8    Following that discovery, Didion renewed its motion to dismiss, now under summary judgment standards. *See* WIS. STAT. § 802.06(2)(b) (when a motion to dismiss for failure to state a claim raises "matters outside of the pleadings … not excluded by the court, the motion shall be treated as one for summary judgment"). Didion argued that there was no genuine, material issue of fact regarding whether workers' compensation remedies applied to the employees' claims under WIS. STAT. § 102.03.

¶9    The employees opposed Didion's motion based on two theories, one that applies to all of the employees killed or harmed in the explosion, and another that applies only to Booker. With respect to all of the killed or injured employees, they argued that there is a genuine issue regarding whether the explosion constitutes an "accident," which is one of the "conditions of liability" needed for the exclusive workers' compensation remedies to apply. *See* WIS. STAT. § 102.03(1)(e), (2). Regarding Booker specifically, the employees argued that there is an additional basis to deny summary judgment to dismiss his claims that he was injured while assisting coworkers in the aftermath of the explosion when he was not scheduled to be working for Didion.

¶10 The circuit court granted Didion's motion to dismiss under summary judgment standards on the basis of WIS. STAT. § 102.03(2). The employees appeal.

**STANDARD OF REVIEW AND APPLICABLE LEGAL PRINCIPLES**

¶11 "We review summary judgment decisions de novo, applying the same methodology as the circuit court." *Peterson v. Arlington Hosp. Staffing, Inc.*, 2004 WI App 199, ¶5, 276 Wis. 2d 746, 689 N.W.2d 61. "[S]ummary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; WIS. STAT. § 802.08(2). Here, the appropriateness of summary judgment turns on whether the employees' claims are subject to the exclusive remedy provision of the compensation act, which is also an issue that this court reviews de novo. *See Peterson*, 276 Wis. 2d 746, ¶5.

¶12 As noted, when conditions of liability specified in WIS. STAT. § 102.03(1) are met, the remedies provided under the compensation act are exclusive. § 102.03(2); *Graef v. Continental Indem. Co.*, 2021 WI 45, ¶13, 397 Wis. 2d 75, 959 N.W.2d 628. This arrangement is "an integral feature" of the compromise struck by the compensation act "between the interest of the employer and the interest of the worker." *Graef*, 397 Wis. 2d 75, ¶13 (citation omitted). Thus, "courts must 'exercise care to avoid upsetting the balance of interests achieved by'" the compensation act. *Id.* (citation omitted). Under this compromise, referred to in case law as "the grand bargain," workers give up the right to sue employers for civil tort claims as compensation for worker-related injuries in exchange for gaining the right to potentially smaller but more certain recoveries regardless of fault. *See id.*, ¶¶10, 13. For their part, employers become

liable for covered claims regardless of fault, but gain immunity from civil tort claims. *See id.*, ¶10.

¶13 Pursuant to WIS. STAT. § 102.03(1), the exclusive remedies of the compensation act apply when:

- the employee sustains an injury;

- at the time of injury, both the employer and employee are subject to the [compensation act];

- at the time of the injury, the employee is performing service growing out of and incidental to their employment;

- the injury is not intentionally self-inflicted; and

- the accident or disease causing injury arises out of the employment.

*See Graef*, 397 Wis. 2d 75, ¶11 (citing WIS. STAT. § 102.03(1)(a)-(e)).

## DISCUSSION

¶14 The employees renew their arguments from the circuit court in opposition to summary judgment, namely, that their claims do not satisfy all of the conditions of liability needed for the exclusive compensation act remedies to apply. There is no dispute that several of the conditions of liability in WIS. STAT. § 102.03(1) apply here, and that the employees received benefits under the compensation act for injuries sustained in the explosion.[3] One condition of liability that is in dispute is whether the explosion qualifies as an "accident." *See*

---

[3] It is undisputed that: each of the employees sustained injuries as a result of the explosion; at the time of the injuries, the employees and Didion were subject to the compensation act; and the injuries were not intentionally self-inflicted. *See Graef v. Continental Indem. Co.*, 2021 WI 45, ¶11, 397 Wis. 2d 75, 959 N.W.2d 628; WIS. STAT. § 102.03(1).

§ 102.03(1)(e) (listing as a condition of liability that there is an "accident … causing injury aris[ing] out of the employee's employment"). The other disputed condition is whether, in the case of Booker only, he was "performing service growing out of and incidental to his … employment" at the time of his injuries. *See* § 102.03(1)(c)1.

## I.  The Explosion as an "Accident"

¶15    The employees argue that there is a genuine issue of fact regarding whether the explosion here constitutes an "accident" for purposes of WIS. STAT. § 102.03(1).  In this context, "accident" is not defined statutorily, but its meaning has been developed in case law.  *See **Lentz v. Young***, 195 Wis. 2d 457, 469, 536 N.W.2d 451 (Ct. App. 1995), *overruled on other grounds by **Maple Grove Country Club Inc. v. Maple Grove Estates Sanitary Dist.***, 2019 WI 43, ¶48, 386 Wis. 2d 425, 926 N.W.2d 184.  The employees base their argument on two grounds, each relating to principles from case law regarding the meaning of "accident" in this context.  The first ground is that, the employees argue, there is a genuine issue of fact regarding whether the explosion was the result of "intentional conduct" by Didion as their employer.  The second is that there is a genuine issue of fact about whether the explosion was a foreseeable and an expected event from the perspective of the employees.

### A.  Employer Intentional Conduct

¶16    The employees' argument about intentional conduct relies in large part on this court's decision in *Lentz*.  We summarize *Lentz*, then discuss how it has been clarified in subsequent case law to limit its application on a broader scale in the compensation act context, before explaining that *Lentz* is inapplicable here.

7

¶17   In ***Lentz***, an employer, who was a sole proprietor, engaged in "deliberate conduct," namely verbal and physical harassment, which caused injuries to an employee. ***Lentz***, 195 Wis. 2d at 470-71. This court concluded that this deliberate conduct was not an accident under the compensation act based on the following principle noted in a treatise on workers' compensation law: "[a]n intentional assault by the employer upon the employee, when the employer acts in person as distinguished from constructively through an agent, will ground a common-law action for damages," as distinct from the normally exclusive remedies permitted through a statutory workers' compensation regime. ***Id.*** at 470, 472 (citing 2A *Larson*, WORKMEN'S COMPENSATION LAW 13-1 (1994)) (alteration in ***Lentz***). Applying this principle to the claims at issue, this court concluded that when "an employer injures an employee through his or her intentional conduct, the injury is not an 'accident' under the [compensation act], at least to the extent that such intentional conduct involves sexual harassment." *See **id.*** at 472.

¶18   One aspect of our conclusion was based on the purposes of the compensation act, which include providing financial and medical benefits to employees who are injured on the job and "allocat[ing] the financial burden to the most appropriate source, the employer, and ultimately the consumer of the product." ***Id.*** (citation omitted). We reasoned that "[w]hen an employer intentionally injures an employee," allocation of the resulting financial burden to the public, ultimately as the consumer, is inappropriate. ***Id.*** Instead, "the burden of compensating the employee for the consequences of the intentional act should lie exclusively with the employer," "particularly … with regard to sexual harassment cases." ***Id.***

¶19   As noted above, our supreme court overruled ***Lentz*** on grounds not relevant to the issues presented in this appeal. ***Maple Grove Country Club***, 386

8

Wis. 2d 425, ¶¶47-48 & n.14 ("overrul[ing] *Lentz*" because it permitted parties to raise certain affirmative defenses in a way that was contrary to statutory language). But, in doing so, the court acknowledged that *Lentz* has been subsequently interpreted in a limited way. *See id.*, ¶48 n.14. Specifically, the court clarified that the rule from *Lentz* that "an employer's intentional sexual harassment of an employee is not an 'accident'" for purposes of the compensation act "retains vitality." *See Maple Grove Country Club*, 386 Wis. 2d 425, ¶48 n.14. However, the court also noted that this aspect of *Lentz* "was subsequently limited" in this court's later decision in *Peterson*. *See Maple Grove Country Club*, 386 Wis. 2d 425, ¶48 n.14 (citing *Peterson*, 276 Wis. 2d 746, ¶¶16-21).

¶20 In *Peterson*, we summarized *Lentz* as "simply a narrow exception" to the general rule that whether an injury-causing event is an "accident" does not depend on whether the event was the result of an intentional or an unintentional act. *See Peterson*, 276 Wis. 2d 746, ¶¶18, 20-21. Instead, under the general rule, the intent of a person who causes the harm does not necessarily dictate whether the pertinent event is an accident because the definition of "accident" is viewed from the perspective of the injured employee, not the employer. *See Lentz*, 195 Wis. 2d at 469 (discussing *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 263, 468 N.W.2d 1 (1991)). The narrow exception provided for in *Lentz* concerned the "unique situation" when a sole proprietor, who is the employer, "has intentionally caused the employee's injury." *Peterson*, 276 Wis. 2d 746, ¶20. In that scenario, we determined that the sole proprietor should not be able to use "the [compensation act] as a shield to protect himself or herself from liability for intentional acts against an employee." *Id.*

¶21 Applying this understanding of *Lentz* here, the employees' claims concern Didion, a corporate entity, which the employees show committed all

pertinent actions and omissions through individuals. *See id.*, ¶21 (explaining that *Lentz* was inapplicable because, in *Peterson*, the intentional act was committed by a co-employee); *Lentz*, 195 Wis. 2d at 470 (distinguishing between an "intentional assault by the employer on the employee, when the employer acts in person" from acts of an employer acting "constructively through an agent" (citation omitted)).

¶22 The following example identified by the employees comes closest to identifying intentional conduct by the employer. The employees point to evidence from the deposition testimony of one Didion employee who alleges that, after the May 29 fire, he was told to go back to work and that "one of the owners of the company was there and they restarted production." But the employees do not develop an argument from this evidence that explains how we can apply the "narrow rule" in *Lentz* to the example. That is, the employees do not allege or provide a theory for how the alleged decision and order to return to work and resume production was the direct action of Didion, as opposed to the action of an agent of Didion or a co-employee.

¶23 Other instances of intentional conduct alleged by the employees are yet more clearly related to the actions of individual agents of Didion or co-employees and therefore fall even further outside the scope of the rule in *Lentz*. Included in this alleged conduct are Didion co-employees knowingly recording and sharing with state regulators false information related to the safe operation of the mill. The employees emphasize that many of these allegations appear in a plea agreement between Didion and federal prosecutors, in which Didion's CEO admitted that the conduct of providing false information was "in all respects

10

knowing and deliberate," and not the result of mistake or accident.[4]  But, to repeat, none of these acts involve a sole proprietor intentionally taking direct actions that inflicted harm on any employee.  *See Jenson*, 161 Wis. 2d at 266 (injury to plaintiff caused by co-employee through intentional acts was accident for compensation act purposes).  If the employees here intend to suggest that an admission of criminal liability has some bearing on applying *Lentz* or WIS. STAT. § 102.03(1) more generally, they fail to support that proposition with legal authority.

¶24    Moreover, each of the intentional acts that the employees allege Didion took to cause the explosion are part of what the employees contend was a broader failure to take adequate safety measures in the mill, which in turn allegedly caused the explosion, rather than the owners of Didion engaging in direct acts to intentionally cause the explosion.  The factual scenario here differs in that respect from *Lentz*, which further undercuts its application.  As noted, in *Lentz*, the intentional conduct at issue was the sexual harassment of an employee committed directly by the employer, who was the sole owner of the business where the employee worked, which is where most of the harassing conduct

---

[4] Didion argues that the employees base some of their arguments against summary judgment on alleged intentional acts described in materials that are not properly considered under summary judgment methodology.  *See* WIS. STAT. § 802.08(2) (summary judgment dependent on what is shown in "pleadings, depositions, answers to interrogatories, … admissions on file, together with … affidavits"); *see also* § 802.08(3) ("Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence.").  For example, Didion contends that the employees cannot rely on a "statement of facts" section from a plea agreement reached between federal prosecutors and Didion related to charges the record does not detail and arising out of a federal Occupational Safety and Health Administration investigation following the explosion.  We assume without deciding that the employees can rely on this evidence in attempting to defeat summary judgment.  But for the reasons stated in the text, we conclude that summary judgment in favor of Didion is appropriate here.

occurred. *Lentz*, 195 Wis. 2d at 462-63, 471. As a result of this conduct, the employee plaintiff suffered emotional distress that required medical treatment. *Id.* at 462-63; *see also id.* at 471-72 (noting this court's concern that the compensation act not be interpreted to allow an employer-defendant to "assault [an employee] with impunity and the only remedy" for the employee would be workers' compensation (citation omitted)).

¶25     Here, the "intentional acts" that the employees allege involve Didion's failure to maintain a safe working environment, such as failing to install dust control and fire suppression systems, which the employees' argue eventually led to the explosion. These are not allegations that Didion intentionally and deliberately engaged in conduct that directly caused the explosion. In contrast to *Lentz*, when employee injuries result in this type of an unsafe work environment claim, the injuries can be covered by the compensation act's exclusive remedies, provided that they resulted from unforeseen "accidents," as we address below. *See Knoll v. Shaler*, 180 Wis. 66, 192 N.W. 399 (1923) (compensation act covered claim that employer failed to provide a safe work environment by forcing employee to work in a room with combustible and flammable materials and sparking equipment that led to an explosion).

¶26     The employees note that, in another decision of this court, which was issued before *Peterson*, we described some of the reasoning in *Lentz* in broad terms. Specifically, in *Cohn v. Apogee, Inc.*, 225 Wis. 2d 815, 819, 593 N.W.2d 921 (Ct. App. 1999), we cited *Lentz* for the proposition that "[h]arm to an employee caused by an *employer's* intentional conduct … is *not* an 'accident.'" However, it is not reasonable to interpret this statement as expanding *Lentz*'s reasoning beyond its "unique situation" concerning a sole proprietor and employer engaging in intentional acts that injured an employee, especially in the wake of

*Peterson*, which makes it clear that the exception to general compensation act principles recognized in *Lentz* is "narrow." *Peterson*, 276 Wis. 2d 746, ¶20. Further, in *Cohn*, consistent with *Peterson*, the intentional conduct at issue was that of a co-employee who worked for the same corporate employer as the plaintiff, rather than intentional acts of a sole proprietor and employer, which meant that the intentional conduct constituted an "accident," and the compensation act's exclusive remedies applied. *Cohn*, 225 Wis. 2d at 819.

¶27     In reply, the employees argue that the references to sole proprietors in *Peterson* were meant only to distinguish claims of intentional harm caused by sole proprietors from claims of intentional harm against other kinds of individuals, namely co-employees. But as we explain above, *Peterson* has been recognized by our supreme court as "limit[ing]" *Lentz*, *see Maple Grove Country Club*, 386 Wis. 2d 425, ¶48 n.14, which is consistent with *Peterson* speaking in unqualified terms when interpreting *Lentz* to narrowly apply to "a sole proprietor, and therefore, the employer." *Peterson*, 276 Wis. 2d 746, ¶20. Beyond this, the employees do not explain how their interpretation of *Peterson* helps them here. For example, they do not explain how the decisions and actions of any individual reflected in the summary judgment materials should be treated as intentional acts by Didion.

¶28     In sum, *Lentz* is distinguishable from the facts here, and does not place the employees' claims regarding intentional acts causing the explosion outside of the scope of "accidental" injuries covered by exclusive compensation act remedies. Setting aside the intentional acts topic, this leaves the issue of whether, under more generally applicable case law in the workers' compensation context, the explosion constitutes an "accident" because it was foreseeable and expected by the employees.

### B. Foreseeability and Expectation

¶29 For purposes of applying WIS. STAT. § 102.03, an "accident" has been defined in case law as "a fortuitous event unexpected or unforeseen by the injured person." *Jenson*, 161 Wis. 2d at 264 (citation omitted); *see also School Dist. No. 1, Vill. of Brown Deer v. DILHR*, 62 Wis. 2d 370, 374-75, 215 N.W.2d 373 (1974) (citing BLACK'S LAW DICTIONARY (defining "accident" in the worker's compensation context as "[a] befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event; chance; contingency; often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; casualty; mishap; as to die by an accident…")). Further, "[i]f the result of the act is unexpected or unforeseen" by the injured individual, then a resulting injury is also considered an accident. *See School Dist. No. 1*, 62 Wis. 2d at 375. As noted, "whether the conduct is an accident must be viewed from the perspective of the injured party." *Jensen*, 161 Wis. 2d at 264. The concept of "foreseeability" addressed in this context is distinct from "foreseeability as understood in negligence actions under tort law." *See Brenne v. DIHLR*, 38 Wis. 2d 84, 93, 156 N.W.2d 497 (1968); *see also Rockweit v. Senecal*, 197 Wis. 2d 409, 420, 541 N.W.2d 742 (1995) ("A party is negligent when [the party] commits an act when some harm to someone is foreseeable." (citation omitted)).

¶30 Despite the broad definition of accident applied by Wisconsin courts in interpreting the compensation act, an accident does not "encompass[] every occurrence or event which befalls the employee while performing service growing out of or incidental to his employment. To so define 'accident' … would be losing sight of the legislative purpose" for workers' compensation. *School Dist. No. 1*, 62 Wis. 2d at 375; *see also County of Dane v. LIRC*, 2009 WI 9, ¶35, 315 Wis. 2d

293, 759 N.W.2d 571 ("[A]lthough we are to broadly construe worker[s'] compensation statutes, we must also interpret the statute[s'] language 'where possible to give reasonable effect to every word, in order to avoid surplusage.'" (citation omitted)).

¶31 Here, applying this definition of "accident," we conclude that the summary judgment materials do not give rise to a genuine issue of fact that the explosion was something other than a "fortuitous event" or "befalling" of the kind that was unforeseen by the employees, constituting an "accident" under WIS. STAT. § 102.03(1). *See School Dist. No. 1*, 62 Wis. 2d at 374-75. That is, there is no evidence in the summary judgment materials that the explosion was anything other than an "undesigned" event in the sense that the employees do not point to evidence, known to them before the explosion, that could give rise to the inference that any employee at Didion expected the explosion to happen when it did. Although some of the employees expressed confidence that some kind of event like the explosion would occur at some point soon after the preceding fire, these employees did not foresee when such an event would occur, or the scope of such an event.

¶32 Booker's testimony provides an example of a relatively more confident prediction that there would be an explosion, although even then he did not testify that he knew when or how serious such an event would be. He testified that he "didn't know at exactly the time it was going to happen; but during [his] employment with Didion, [he] genuinely believed there would be an explosion." Booker developed "great concerns," which he shared with supervisors, based on a documentary of a dust-caused explosion at a similar facility that resembled the one that ended up happening here. Employee Aguirre Martinez testified that, over the course of working at the mill for 16 years, he "saw lots of … problems," leading

him to believe that it "was a matter of time until something big would happen, such as an explosion, for example." Employee Dominguez Sixto testified that his cousin—also an employee, who died in the explosion—referred to the plant as a "ticking bomb" and predicted that "something was going to happen" after the May 29 fire. For his part, Dominguez Sixto did not take his cousin's concern seriously at the time, "because [he] never thought that an explosion would occur," though he was generally aware of the risk that corn dust could combust.

¶33 Other employees expressed less certainty about whether an explosion would occur at all. For example, employee Vander Galien testified that, "based on what other people were telling [him]," an explosion at the plant "could happen," but he didn't know when or how big it would be. At the time of the explosion, employee Hayden Dodge "trusted" Didion, and he, like Margaret Lane and Collin Vander Galien, did not at the time expect there to be an explosion. Indeed, as Didion now emphasizes, none of the employees who were deposed indicated that they expected an explosion to occur that night, even as some of them searched for the source of smoke in the mill—which was a typical occurrence when the employees smelled or saw smoke at the mill—shortly before it exploded.

¶34 The employees argue that any differences in views among them in their deposition testimony about the foreseeability of the mill explosion simply creates a question of fact regarding how foreseeable the explosion was. However, even looking to the most confident statements in the summary judgment materials that some kind of explosion would eventually occur, the employees do not identify evidence that the explosion that did occur, with its magnitude and timing, was foreseen and expected. As some employees testified in their depositions, if they had foreseen that an explosion was about to occur at the mill, they would have

taken steps to prevent the explosion or simply not have been present at work that day. These relatively more confident statements show only an expectation that something like the explosion would occur, possibly soon after the May 29 fire.

¶35 Regarding this last point, the employees argue that requiring an expectation that a particular accident would occur at a particular time in order to fall outside of the definition of "accident" virtually guarantees that employers like Didion will be immunized from tort liability no matter how such employers contribute to the occurrence of the injury-causing event. In a related vein, the employees argue that requiring a greater level of certainty and specificity than is present in the evidence here in order to avoid applying compensation act remedies would make it "a nearly impossible task" for employees to sue in tort, again, no matter how egregious the employer's actions.

¶36 It is not clear to us that concluding that the explosion here was an accident under summary judgment standards necessarily means that future cases with different evidence could not raise genuine issues regarding whether a particular adverse event such as an explosion occurring at or around a workplace was unforeseen and unexpected.

¶37 Setting that to the side, it undermines the employees' arguments that, as noted above, the purpose of Wisconsin's workers' compensation law is to strike a "grand bargain" under which employers "receiv[e] immunity from tort liability" for covered injuries. *See Graef*, 397 Wis. 2d 75, ¶10 (citations omitted). Given that the compensation act "is a remedial statute that must be liberally construed to afford compensation," it is unsurprising that the broad scope of the act creates challenges for workers to sue in tort for incidents such as the explosion here. *See Estate of Torres v. Morales*, 2008 WI App 113, ¶8, 313 Wis. 2d 371, 756 N.W.2d

662 (citation omitted). As we have explained, this was anticipated or predicted to various degrees by some employees, but it was unexpected up until it occurred or mere moments before.

¶38 While in some ways not directly applicable to the issues here, our supreme court's decision in *Knoll* is illustrative of this last point. In *Knoll*, a plaintiff worker allegedly "work[ed] in a room filled with combustible and inflammable material, in which there were operated motors which were likely to and did discharge sparks." *Knoll*, 180 Wis. at 66. This sparking allegedly "resulted in the ignition of the inflammable dust and inflammable and combustible materials," causing an explosion and fire that killed the plaintiff. *Id.* The court in *Knoll* stated that "there can be no question … the injury sustained was proximately caused by accident." *Id.* at 68. It is true that the issue presented in that case is not the same as here. The plaintiff in *Knoll* argued that the exclusivity of workers' compensation remedies should not apply because the plaintiff's claim was based on the allegation that the employer violated its statutory obligation to maintain a safe work environment. *See id.* Further, the court in *Knoll* did not specifically address whether the explosion and fire were unforeseen and unexpected. *Id.* at 68-70. Nonetheless, the facts and claim at issue in *Knoll* strongly imply that it is unsurprising that compensation act benefits can exclusively apply even in circumstances involving an employer failing to take reasonable steps to account for dangers that would be readily foreseeable in a general sense, for example, when the employer requires workers to be in the presence of sparking machinery near flammable materials.[5]

---

[5] As Didion notes, case law contains other examples of injuries caused by explosions that were exclusively compensable under the compensation act, though in these cases it appeared to
(continued)

¶39    Moreover, the employees' approach to "accident" runs contrary to the purposes of the compensation act and its exclusive remedy feature.  Under their approach, if there is evidence that a kind of incident could generally occur in a particular workplace in the relative near-term, then the actual occurrence of this type of incident would not be an accident.  This approach would drain the term "accident" of much of its applicability.  The result would be that injured workers would be much more likely to have to prove that their injuries were not only unforeseen, but *unforeseeable*, in order to obtain compensation act benefits, or else face the challenge of proving fault through tort claims.  *See Graef*, 397 Wis. 2d 75, ¶10 (compensation act grants workers "smaller but more certain recoveries" in exchange for not having to prove fault (citation omitted)).

¶40    In sum on the issue of whether the explosion here constituted an "accident" for purposes of the condition of liability in WIS. STAT. § 102.03(1)(e), we conclude that the circuit court did not err in determining that there is no dispute about any issue of material fact that forecloses granting of summary judgment in favor of Didion.

---

be undisputed, without analysis, that the explosions were accidents for purposes of WIS. STAT. § 102.03(1). *See Kerner v. Employers Mut. Liab. Ins. Co.*, 35 Wis. 2d 391, 393-96, 151 N.W.2d 72 (1967) (compensation act's exclusive remedies blocked tort claims against workers' compensation insurer for injuries caused by explosion and fire in feed mill); *Garchek v. Norton Co.*, 67 Wis. 2d 125, 126, 129-30, 226 N.W.2d 432 (1975) (compensation act's exclusive remedies blocked tort claim against corporate officer for injuries caused by explosion of grinding machine); *Meka v. Falk Corp.*, 102 Wis. 2d 148, 150, 306 N.W.2d 65 (1981) (compensation act's exclusive remedies blocked tort claims against employer by employee loaned by a different company for injuries caused by propane system explosion), *superseded by statute as noted in Borneman v. Corwyn Transp., Ltd.*, 212 Wis. 2d 25, 34 n.2, 567 N.W.2d 887 (Ct. App. 1997).

## II.  Booker's Course of Employment

¶41    Concerning Booker's injuries, the employees argue that, because those injuries did not occur when he was "performing services growing out of and incidental to" his employment, the exclusive remedies provision of the compensation act does not apply to him.  *See* WIS. STAT. § 102.03(1)(c)1.  They argue that this is because Booker, outside of his work hours, traveled to the mill from his nearby house after he heard the explosion, and was injured attempting to rescue coworkers.  Didion argues, based on case law in the workers' compensation context discussing the duty of employers to rescue their employees, that by attempting to assist his coworkers after the explosion, Booker was performing a service to his employer when he was injured.  We agree with Didion.[6]

¶42    The phrase in WIS. STAT. § 102.03(1)(c)1., "performing service growing out of and incidental to his or her employment," is understood interchangeably with what some cases refer to as the "course of employment." *See* ***Ide v. LIRC***, 224 Wis. 2d 159, 169, 589 N.W.2d 363 (1999) (citing ***Weiss v. City of Milwaukee***, 208 Wis. 2d 95, 104, 559 N.W.2d 588 (1997)).  "Both phrases refer to the 'time, place, and circumstances' under which the injury occurred." ***Id.*** (citing ***Weiss***, 208 Wis. 2d at 104).  "An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto." ***Id.*** (citing ***Weiss***,

---

[6] Didion also argues that the employees forfeited their argument regarding Booker's injury, based on WIS. STAT. § 102.03(1)(c)1., by failing to raise that argument in the circuit court. We assume without deciding that the employees raised this argument with sufficient clarity in the circuit court in order to preserve it for appeal.

208 Wis. 2d at 105 (alteration in *Ide*)). This "course of employment" concept "is broader than the common-law 'scope of employment.'" ***Employers Mut. Liab. Ins. Co. v. DILHR***, 52 Wis. 2d 515, 521, 190 N.W.2d 907 (1971). That is, *respondeat superior* principles do not apply in the workers' compensation context.[7] ***Village of Butler v. Industrial Comm'n***, 265 Wis. 380, 383-84, 61 N.W.2d 490 (1953).

¶43 Workers' compensation law "must be liberally construed to include all service that can be reasonably said to come within it." ***Employers Mut.***, 52 Wis. 2d at 522 (citation omitted); *see also **id.*** at 521-22 (noting, among other examples, that an employee injury sustained while having his own truck repaired was incidental to work because the truck was used to haul gravel for his employer).

¶44 Turning to the employees' argument, it is not well developed. The employees appear to primarily concentrate on whether Booker's efforts to assist his coworkers in the aftermath of the explosion were incidental to his duties as a Didion employee. To this end, they assert that his laudable efforts to "pull[] workers from a burning mill w[ere] not part" of his duties, or at least there is a question of fact regarding whether his efforts were incidental to any employment duty.

---

[7] We note that the employees cite to case law discussing tort-based "scope of employment" concepts, but we do not rely on this case law for the reasons explained in the text, and instead we apply authority from the workers' compensation context. Specifically, the employees rely on ***Korntved v. Advanced Healthcare, S.C.***, 2005 WI App 197, ¶¶11-12, 286 Wis. 2d 499, 704 N.W.2d 597, to argue that the issue of whether Booker acted within the "scope of his employment" is "generally" a fact question and "rarely" resolved by the circuit court as a matter of law. We reject this argument because *Korntved* concerns the scope of employment in the context of a tort action, and is inapplicable here.

¶45    Our supreme court has stated that "[i]t is the duty of an employer to rescue his employee from a position of imminent danger in an emergency." *Conveyors' Corp. of Am. v. Industrial Comm'n*, 200 Wis. 512, 515, 228 N.W. 118 (1929).    This duty is based in part on statutory language now found in substantially the same form in present-day WIS. STAT. § 101.11(1).    *See Conveyors' Corp.*, 200 Wis. at 516 ("the employer 'shall do every other thing reasonably necessary to protect the life' of the employee" (quoting then applicable WIS. STAT. § 101.06, renumbered to § 101.11(1) by 1971 Wis. Act 185); *see also* § 101.11(1) ("Every employer … shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees ….").    In attempting to fulfill this duty, a "corporation [can] only act through its agents or employees."    *Conveyors' Corp.*, 200 Wis. at 516.    In other words, the duty to rescue can extend from a corporation to its agents or employees present at the scene of a workplace emergency.    *See id.* (the employer's employee "was the only agent of the corporation who was present" when he found a coworker who was "overcome in the bottom of [a] tank," thus it was the employee's "duty towards his employer to act immediately and with greatest possible speed to rescue" the coworker).[8]    The employees have failed to persuasively refute Didion's argument

---

[8] The employees point out that one issue in *Conveyors' Corp.*, and subsequent case law applying its reasoning, that is not present here concerns when a person who is not employed by an employer comes to the rescue of someone who is an employee, such that the rescuer becomes an employee for purposes of WIS. STAT. § 102.03.    *See, e.g.*, *Michels Pipeline Const., Inc. v. LIRC*, 197 Wis. 2d 927, 932-33, 541 N.W.2d 241 (Ct. App. 1995) (discussing when "a contract of employment by implication" can arise pursuant to an employer's duty to rescue its employees from emergencies (citation omitted)); WIS. STAT. § 102.04(1)(e) (defining "employer" in part to potentially include those hired with implied or oral contracts).    Here, Booker was an employee of Didion at the time of the explosion, although he was not then working a shift.    It remains, however, that *Conveyors' Corp.* includes broad statements about the duty of employers to rescue employees who are in danger, as carried out through the employer's other agents or employees as necessary.    We discern no persuasive argument that the reasoning of *Conveyors' Corp.* should not apply when an employee attempts to rescue co-employees of the same employer after a workplace incident.    If anything, as Booker's deposition testimony indicates, the underpinnings of

(continued)

22

that Booker was acting within the duty to rescue coworkers as described in *Conveyors' Corp.*, and therefore his acts were incidental to his employment when he responded to the sound of the explosion and attempted to rescue coworkers.

¶46 It does not undermine Didion's point that there is no evidence that no one else with Didion asked or instructed Booker to come to the aid of his coworkers after the explosion, or that Didion did not spell out such a duty by any means. The focus of WIS. STAT. § 102.03(1)(c)1. is on services *growing out* of and *incidental* to an injured worker's employment. This includes services to the employer that are "in addition to the things for which [the employee] is specifically employed," provided that "such further work [is] in advancement of [the] employer's interests[,] … reasonably necessary at the time and place[,] and which [the employee] has not been forbidden to do." *See Anderson v. Industrial Comm'n*, 250 Wis. 330, 334, 27 N.W.2d 499 (1947) (citing *Conveyors' Corp.*, 200 Wis. 512).

¶47 With these legal standards as background, there is nothing in Booker's deposition testimony raising an issue of fact as to whether his actions fit within his rendering a service to Didion in the form of helping Didion comply with its duty to rescue its workers. Booker testified that he went to the mill from his house, immediately after hearing the explosion, because he felt both a duty as an employee and as a human being to help rescue coworkers whom he reasonably believed to be in danger. There is no dispute that Booker was injured when

the employer's duty to rescue would more strongly attach in the situation here. As Booker testified, he had a duty as an employee and as a human being to help rescue his coworkers.

attempting to perform this duty, and that the injury occurred while at the site of the explosion.

¶48    The employees also rely on *Weiss* to argue that when Booker was injured, he was not fulfilling his duties or engaged in work incidental to those duties.  *See Weiss*, 208 Wis. 2d at 105.  However, the employees are not clear about what aspect of *Weiss* supports their argument that Booker was not acting within the course of his employment when he was injured.

¶49    The employees may intend to argue that the fact that Booker was at home, outside of his work hours, when the explosion occurred supports concluding that he was not acting incidentally to his employment.  If intended, we reject this argument as undeveloped because the employees do not explain why this fact produces a different result and they do not cite to legal authority that could support such an argument.  *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶50    Moreover, case law suggests the opposite conclusion.  The right to recover workers' compensation is "not predicated upon the fact" that an employee is or is not being paid for the specific time during which the injury occurs, provided that the employee is performing a duty arising out of the employee's employment.  *See Hackley-Phelps-Bonnell Co. v. Industrial Comm'n*, 165 Wis. 586, 591, 162 N.W. 921 (1917).  Thus, for example, in *Hackley-Phelps*, when a logger was directed to take a train to get his time slip after he was done with work for the day, and was injured on the train ride, this was an injury incidental to his employment.  *Id.* at 588-90.  More broadly, the "time" factor of the "course of employment" test noted in cases such as *Weiss* relates to the timing of an employee's injury relative to when the employee was fulfilling a duty to the

employer. *See Weiss*, 208 Wis. 2d at 104-05. As we have discussed, there is no dispute that Booker was injured while fulfilling the duty to rescue his coworkers.

## III. Motion for Sanctions

¶51 Didion moves for an order based on frivolous briefing by the employees, pursuant to WIS. STAT. RULE 809.25(3) and WIS. STAT. § 895.044(5). Whether an appeal is frivolous is a question of law. *Howell v. Denomie*, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621. Sanctions for a frivolous appeal will be imposed if the court concludes that the party "knew, or should have known, that the appeal … [had no] reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." *Id.* (citing RULE 809.25(3)(c)2.). Importantly, to award costs and attorney fees, we "must conclude that the entire appeal is frivolous." *Howell*, 282 Wis. 2d 130, ¶9. In deciding whether an appeal is frivolous under RULE 809.25(3)(c)2., we "resolve all doubt in favor of finding the claim[s] nonfrivolous." *Dietscher v. Pension Bd. of Emps. Ret. Sys.*, 2019 WI App 37, ¶56, 388 Wis. 2d 225, 932 N.W.2d 446 (citation omitted).

¶52 The employees present arguments and challenge the rulings of the circuit court in a complex area of the law. We cannot conclude that the entire appeal lacks any "reasonable basis in law or equity." *See Howell*, 282 Wis. 2d 130, ¶9 (citation omitted). Specifically, the employees present arguments with a reasonable basis in the particular facts of this case and the law that some of the conditions of liability in WIS. STAT. § 102.03(1) are not met under summary judgment standards. Accordingly, we conclude that the entire appeal is not frivolous.

**CONCLUSION**

¶53 For these reasons, we affirm the order of the circuit court granting summary judgment in Didion's favor, and dismissing the action. We deny Didion's motion for sanctions.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.